IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KIMBERLY A. BRUCTO,** : | |
| : | **Case No. 2:20-cv-3157** |
| **Plaintiff,** : | |
| : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | **Magistrate Judge Jolson** |
| **COMMISSIONER OF** : | |
| **SOCIAL SECURITY,** : | |
| **Defendant.** : | |
| : | |

**OPINION & ORDER**

This matter is before the Court on the Plaintiff's Objections (ECF No. 21) to the Magistrate Judge's May 11, 2021 Report and Recommendation (ECF No. 20), recommending that this Court overrule the Plaintiff's Statement of Errors (ECF No. 17) and affirm the Commissioner's decision. Following *de novo* review by this Court, Plaintiff's Objections are hereby **SUSTAINED** and the Court **REJECTS** the Magistrate Judge's Report and Recommendation for the reasons set forth below. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this decision.

**I.  BACKGROUND**

Plaintiff Kimberly A. Bructo protectively filed her application for Disability Insurance Benefits on December 30, 2016, alleging that she had been disabled since July 1, 2016 because of type II diabetes, neuropathy, hallux varus, degenerative disc disease, and cardiac arrhythmia. (R. at 15, 18). Her application was denied initially and upon reconsideration. (R. at 15). The Administrative Law Judge ("ALJ") held a hearing on January 7, 2019, and ultimately denied benefits on May 1, 2019. (R. at 15–22).

1

In the opinion denying benefits, the ALJ conducted the required five-step sequential analysis for a disability benefits claim. *See* 20 C.F.R. § 404.1520.[1] First, the ALJ determined whether Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. At step one, the ALJ found that Ms. Bructo had not engaged in substantial gainful activity since her alleged onset date of disability. (R. at 18). At step two, the ALJ found that the Plaintiff had severe impairments from degenerative disc disease; diabetes mellitus with peripheral neuropathy; and bilateral foot disorders. (*Id.*). At step three, the ALJ determined that these impairments did not, either singly or in combination, meet or medically equal the requirements of any section of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). Between steps three and four, ALJs assess an individual's residual functioning capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). A person's RFC will then be used at steps four and five to assess her

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

claim for disability benefits. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 28, n.3 (6th Cir. 2009). The ALJ concluded that Ms. Bructo had the following RFC:

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with occasional climbing of stairs, crouching, crawling, kneeling, and stooping/bending; avoiding workplace hazards such as dangerous, moving machinery and unprotected heights; no climbing of ladders, ropes, or scaffolds; occasional foot controls with the bilateral lower extremities.

(R. at 18).[2]

The ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (*Id.* at 19). In reaching this conclusion, the ALJ assigned "some weight" to the opinions of Drs. Hall and Bolz who reviewed Plaintiff's medical records. (*Id.* at 20). The ALJ did not assign great weight to the opinion of Ms. Bructo's treating physician, Dr. Donovan. (*Id.*). Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff was unable to return to past relevant work and would be limited to a range of light work. (*Id.* at 21). Thus, at step four, the ALJ determined that Plaintiff could not perform her past relevant work as a nurse because of the noted ailments. At step five, however, the ALJ found that although Plaintiff was unable to perform her past work, she had acquired work skills from her past relevant work. (*Id.*). The ALJ therefore concluded that she could make a successful adjustment to perform other jobs in the national economy, such as consulting nurse, medical technician, or cardiovascular technician. (*Id.* at 21–22). The ALJ determined that the claimant was not disabled within the meaning of the Social Security Act. (*Id.* at 22).

The Appeals Council denied Plaintiff's request for review on April 20, 2020, making the ALJ's decision final. Ms. Bructo filed suit in this Court on June 22, 2020. (ECF No. 1). The

---

[2] The relevant facts concerning the Plaintiff's RFC are thoroughly set forth in the Magistrate Judge's Report and Recommendation. (ECF No. 12). The relevant facts will be incorporated into the analysis below when appropriate.

Commissioner filed the administrative record on November 2, 2020 (ECF No. 12). On January 22, 2021, the Plaintiff filed her statement of specific errors. (ECF No. 17). First, she contended that the ALJ erred by failing to apply the controlling weight test when evaluating Dr. Donovan's opinions as a treating source. Second, Plaintiff argued that the ALJ failed to articulate good reasons for according less than controlling weight to the opinions of Dr. Donovan. The Commissioner filed a response in opposition, arguing that the ALJ reasonably evaluated Dr. Donovan's medical opinion and that any potential error was harmless. (ECF No. 19).

On May 11, 2021, the Magistrate Judge issued a Report and Recommendation, overruling the Plaintiff's statement of specific errors. (ECF No. 20). The Magistrate Judge recommended that this Court affirm the Commissioner's decision, finding that the ALJ did not violate the "treating physician" and "good reasons" rules. (*Id.* at 7–8). The Plaintiff objected to the Magistrate Judge's Report and Recommendation on May 25, 2021 on similar grounds to those raised in her statement of specific errors. (ECF No. 21). This matter is now ripe for review.

## II. STANDARD OF REVIEW

This Court, upon objection, is required to "make a *de novo* determination of those positions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). This Court's review is "limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Ellis v. Schweiker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the Commissioner's

4

findings are supported by substantial evidence, the Court must consider the record as a whole. *See Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health & Hum. Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

Additionally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013).

### III. LAW & ANALYSIS

The Sixth Circuit has emphasized time and again that the source of a medical opinion dictates "the process by which the Commissioner accords it weight." *Gayheart*, 710 F.3d at 376. For a medical source who regularly treats the claimant, otherwise known as a "treating physician" or "treating source," an ALJ must analyze the treating physician's opinion under the two-step analysis set forth by the Sixth Circuit. *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013). First, the "treating physician rule" requires the ALJ to give the opinion of the claimant's treating physician controlling weight, so long as the opinion is "well-supported by

5

medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in the case record[.]" *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the "good reasons rule" requires the ALJ to give good reasons for the decision as to the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

The Magistrate Judge concluded that the ALJ had provided adequate rationale for the decision not to follow the treating physician rule, thereby satisfying the good reasons rule. (ECF No. 20 at 7–8). Ms. Bructo disagrees. She objects to the Magistrate's Report and Recommendation on the grounds that that the ALJ failed to apply the controlling weight test properly when evaluating Dr. Donovan's opinions as a treating source and that the Magistrate Judge's reliance on the improper ALJ analysis is therefore erroneous. (ECF No. 21 at 2–4). She also objects to the ALJ's failure to provide a logical bridge between the evidence in the record and her conclusion, such that a reviewing court can review the decision adequately, in violation of the "good reasons" rule. (*Id.* at 4). The Commissioner did not file a response to Ms. Bructo's objections. This Court will address each issue in turn.

### A. Treating Physician Rule

Because Dr. Donovan was the Plaintiff's treating physician, her opinion will be entitled to controlling weight if certain conditions are met. First, her opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Hensley*, 573 F.3d at 266 (quoting *Wilson*, 378 F.3d at 544). Second, her opinion must be "not inconsistent with the other substantial evidence in the case record[.]" *Id.* To be not inconsistent, a treating physician's opinion "need not be supported directly by all of the other evidence (i.e., it does not have to be consistent

with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2P, 1996 WL 374188, at *3 (July 2, 1996).[3] The treating physician rule originates from the plain language of 20 C.F.R. § 404.1527(c), which instructs that a medical opinion from a treating physician should be given controlling weight, unless the ALJ sets forth why the opinion is inconsistent with other substantial evidence in the record. Even when a treating physician's opinions are not granted controlling weight, "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Rogers*, 486 F.3d at 242; *see also* SSR 96-2P, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937; *Gayheart*, 710 F.3d at 374.

In her objection, Plaintiff argues that the ALJ failed to evaluate the opinions of her treating physician, Dr. Donovan, because the ALJ did not detail how her opinions were not well supported or were contradicted by other medical evidence of record. (ECF No. 21 at 2). Ms. Bructo began seeing Dr. Donovan, a podiatrist, in July 2018 after she had five surgeries performed on both of her feet. (R. at 978). Dr. Donovan saw Ms. Bructo for follow-ups for continued issues with her feet, including wounds, ulcerations, and "extremely painful" neuropathy. (*Id.* at 960–80). One follow-up stemmed from maceration of Ms. Bructo's feet following aquatic therapy. (*Id.* at 966).

---

[3] If the conditions set forth in *Gayheart* are not satisfied, an ALJ must then determine how much weight to give the treating source's opinion by assessing a number of factors, including the "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *DeHaven v. Comm'r of Soc. Sec.*, No. 1:12-cv-2859, 2014 WL 903112, at *4 (N.D. Ohio Mar. 7, 2014) (citing *Gayheart*, 710 F.3d at 376); *see also* 20 C.F.R. §§ 404.1527(c)(2)–(6)).

Dr. Donovan prescribed medications, as well as stretching exercises. (*Id.* at 960). After seeing Ms. Bructo for six weeks, Dr. Donovan completed a medical assessment form for Ms. Bructo's prior counsel. (*Id.* at 891). She indicated that Ms. Bructo experienced "pain with ambulation, continued neuropathy and continued ulceration with extended periods of standing/walking." (*Id.* at 891). Dr. Donovan indicated that Ms. Bructo would have the following limitations: she would likely miss twenty days of work per month; she could sit for forty-five minutes at a time; she could not stand at all; she could sit less than two hours of a work day; she could stand or walk less than two hours of a work day; she could not ambulate without an assistive device and the device was medically necessary; she could not use foot controls, climb, balance, stoop, kneel, crouch, or crawl; and she could not perform activities like shopping, travelling without a companion, walking a block at a reasonable pace on rough or uneven surfaces, climbing a few steps at a reasonable pace with the use of a single hand rail, or using standard public transportation. (*Id.* at 891–94).

The Plaintiff argues that the ALJ disregarded the controlling weight test, which is reversible error. (ECF No. 17 at 9). She contends that the ALJ failed to determine whether Dr. Donovan's opinions were well supported by medically acceptable clinical and laboratory diagnostic techniques and whether those opinions were not inconsistent with the other substantial evidence within the case record. (*Id.*). The ALJ's discussion of the treating source's opinion merely stated "the undersigned does not give great weight to Dr. Donovan's determination of disability because the record reveals that the ulcers on the claimant's feet were healing and that the surgery on her toes had a good result." (R. at 20).

The ALJ did not apply the treating physician rule, as required by the Commissioner's regulations, codified at 20 C.F.R. § 404.1527(d)(2). First, the ALJ did not determine whether Dr. Donovan's opinions were "well-supported by medically acceptable clinical and laboratory

8

diagnostic techniques." The records from Dr. Donovan's office detail a number of diagnostics performed, including x-rays. The ALJ did not address the results gleaned from those diagnostic tools. Elsewhere in the record, Dr. Donovan's opinion is supported by contemporaneous diagnostics performed by other clinicians. Within the RFC, Dr. Donovan referenced the "risk for loss of limb" as a reason for indicating Ms. Bructo should never perform operation of foot controls. (*Id.* at 892–93). On December 11, 2018, Dr. Powers conducted an Electromyographic Examination on Ms. Bructo, upon referral from Dr. Donovan. (*Id.* at 1107). Through the EMG, the doctor was "unable to elicit sensory responses in [the] feet" and the EMG revealed "significant motor unit damage in distal muscles." (*Id.* at 1109). Additionally, as noted in a letter to Dr. Donovan discussing the findings of the EMG, Dr. Powers found "very little remaining muscle" in the foot intrinsics, "very small but . . . present" motor responses through a "nerve conduction study," and was unable to "pick up any sensory responses in either [foot]." (*Id.* at 1107). The objective medical opinions of Dr. Powers are not inconsistent with Dr. Donovan's opinions that Ms. Bructo has limited residual functioning capacity, including a complete limitation on lifting. (*Id.* at 891). The ALJ also did not address whether Dr. Donovan was relying on medically acceptable clinical techniques. Addressing these factors is necessary to determine whether controlling weight must be given to a treating physician's opinion; only if these conditions are not satisfied may an ALJ determine what alternative weighting to give a treating physician's opinion.

At best, the ALJ addressed whether Dr. Donovan's opinion was "not inconsistent with the other substantial evidence" on a cursory level, after addressing the evidence in the case to date. 20 C.F.R. § 404.1527(c) requires the ALJ sets forth why the opinion is inconsistent with other substantial evidence in the record. The chronology of the evidence relied upon by the ALJ to controvert Dr. Donovan's opinion is important, however. Dr. Donovan's opinions are not wholly

inconsistent with the objective medical opinions provided; any inconsistencies are insubstantial or are attributable to the dates of review. On April 9, 2017, Dr. Hall, a non-treating State Agency physician, reviewed the evidence and determined Ms. Bructo's conditions would not be "so severe as to prevent all work as of 06/30/2017." (R. at 86). On August 17, 2017, Dr. Bolz, another State Agency non-treating physician, determined Plaintiff was not disabled, and he expected her to have "improved standing and walking within three months of [her] last surgery [in July]." (*Id.* at 98, 101). The ALJ assigned only some weight to the agency doctors' opinions because they did not physically examine Ms. Bructo. (*Id.* at 20).

Dr. Hall's and Dr. Bolz's speculations are not inconsistent with Dr. Donovan's opinions, shown through Ms. Bructo's developing care, as her medical conditions have either continued or worsened since both doctors reviewed the evidence. In fact, Ms. Bructo had subsequent surgeries, even after Dr. Hall's projected June 2017 recovery date. Furthermore, Dr. Bolz and Dr. Hall examined the evidence over a year prior to Dr. Donovan's opinions at issue, so citing to inconsistencies between these opinions is not substantial evidence, considering the fact that Ms. Bructo's severe foot issues persisted long past both non-treating physicians' review and projected date of improvement. Thus, citing to these opinions does not overcome the default rule that controlling weight will be assigned to a treating physician's opinions.

The ALJ also relied upon non-clinical evidence in the record to suggest that Dr. Donovan's opinion was inconsistent with other substantial evidence. The ALJ's review often mischaracterizes this evidence. For instance, the ALJ noted that Ms. Bructo was "even advised to exercise." As an initial matter, the Sixth Circuit has held that "the fact that a patient is encouraged to remain active [may] not reflect the manner in which such activities may aggravate the patient's symptoms." *Rogers*, 486 F.3d at 249. The ALJ references Exhibit 18F, which contains Ms. Bructo's medical

10

records from Dr. Donovan. The doctor recommends "stretching exercises" for Ms. Bructo's "Short Achilles tendon (acquired)" for both ankles, to be performed "multiple times daily." (R. at 961). Stretching exercises for Ms. Bructo's Achilles tendons are not inconsistent with Dr. Donovan's notes and did not alter her other findings when she recommended the stretching exercises. Additionally, Ms. Bructo was advised to exercise regularly due to an elevated Body Mass Index (BMI). (*Id.* at 1007). Ms. Bructo attempted five aqua therapy sessions, but had to discontinue this exercise because the prolonged exposure to the water caused more issues with her feet, including a macerated toe. (*Id.* at 54, 966) Therefore, the fact that Ms. Bructo was advised to exercise for her BMI does not constitute substantial evidence within the case record that is inconsistent with Dr. Donovan's opinion as to her feet.

The ALJ also relied upon evidence in the record to find that Ms. Bructo's leg and foot problems were "significant but manageable," such that it undermines Dr. Donovan's opinion. (*Id.* at 20). The ALJ referenced light activities Ms. Bructo managed throughout the day, which include driving, cleaning, cooking, walking a friend's dog, living on three acres of land, and taking care of horses (*Id.* at 20). As an initial matter, the Sixth Circuit has noted that "somewhat minimal daily functions are not comparable to typical work activities." *Rogers*, 486 F.3d at 248–49. Here, the scope of the Plaintiff's daily activities is mischaracterized. Ms. Bructo does not walk her friend's dogs; rather she brushes their hair and lets the dogs out into the backyard. (R. at 49). She also notes she cannot perform this job at all if her toe is ulcerated. (*Id.*). Ms. Bructo's husband takes care of their horses because she is unable to walk to the barn. (*Id.* at 211). Once a week, Ms. Bructo's husband drives her to the barn on a tractor and she brushes the horses' hair. (*Id.* at 214). Ms. Bructo helps fold laundry but needs assistance from her husband to get clothes out of the dryer as she is unable to do any bending because of hardware from a previous back surgery. (*Id.* at 43).

11

Additionally, although Ms. Bructo can engage in light cleaning, assist in making simple meals, and drive short distances, her husband does the grocery shopping, prepares large family meals, and does the majority of driving and cleaning. (*Id.*) In consideration of this evidence, Dr. Donovan's opinions are not inconsistent with other substantial evidence in the record.

For these reasons, this Court finds that the ALJ did not apply the controlling weight test properly to the opinions of Dr. Donovan, Ms. Bructo's treating physician. A failure to follow agency rules and regulations, such as the treating physician's rule, denotes a lack of substantial evidence, even if the ALJ's conclusion may be otherwise justified based upon the record. *Cole*, 661 F.3d at 937; *Gayheart*, 710 F.3d at 374. The failure to provide reasons supported by substantial evidence does not result in a harmless error because the decision deprived the Plaintiff of a decision based on the merits. Accordingly, this Court **SUSTAINS** Ms. Bructo's objection and **REJECTS** the Magistrate Judge's Report and Recommendation.

### B. Good Reasons Rule

Even if the ALJ had applied the treating source rule correctly in this case, the ALJ's decision still fails to comport with the Social Security regulation requiring that an ALJ "always give good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). The Sixth Circuit has held that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (citing SSR 96-2P, 1996 WL 374188, at *5). The requirement for an ALJ to give good reasons serves dual purposes. In part, the "good reasons" requirement informs claimants of the disposition of their cases, "particularly in situations where a claimant knows that his physician

12

has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Blakley*, 581 F.3d at 407 (quoting *Wilson*, 378 F.3d at 544). This requirement also ensures that the ALJ applies the treating physician rule appropriately so as to permit meaningful appellate review. *Id.*

An ALJ must do "more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician or that objective medical evidence does not support that opinion." *DeHaven*, 2014 WL 903112, at *4 (citing *Hensley*, 573 F.3d at 266–67 and *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551–52 (6th Cir. 2010)). Rather, an ALJ "must build an accurate and logical bridge between the evidence and his conclusion" to allow for meaningful appellate review. *Pollard v. Astrue*, No. 1:11-cv-186, 2012 WL 2341814, at *5 (S.D. Ohio June 20, 2012) (citing *Fleisher v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)), *report and recommendation adopted by* 2012 WL 2931310 (S.D. Ohio July 18, 2012).

Where the opinions of a treating physician do not satisfy the two precursors that would require an ALJ to give them controlling weight, the ALJ must analyze a variety of factors in order to determine how much weight to give the opinion. These factors include "length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *DeHaven*, 2014 WL 903112, at *4 (citing *Gayheart*, 710 F.3d at 376); *see also* 20 C.F.R. §§ 404.1527(c)(2)–(6)).

Here, the ALJ failed to address the additional factors set forth in *Gayheart*, which resulted in a failure to provide sufficiently specific good reasons in its decision to "not give great weight" to Dr. Donovan's opinions. The ALJ does not say how much weight was given, be it some, little,

13

or none at all. This precludes meaningful appellate review by this Court, as the failure to articulate the factors considered and the weighting of those factors does not provide "an accurate and logical bridge between the evidence and his conclusion." The ALJ's decision addresses its overall conclusion as to weighting, but contains little discussion of Dr. Donovan's opinion. The decision fails to address length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and Dr. Donovan's specialization, all of which are relevant in determining the importance of her opinion. It then details its view of other evidence in the record, which this Court has already determined to be an inaccurate representation of the record. A failure to follow the good reasons rule is not harmless error, even if substantial evidence may have existed to support the ALJ's determination. *See also Wilson*, 378 F.3d at 544–46. On remand, the ALJ should proceed to analyze the factors set forth in *Gayheart* if the ALJ reaches the conclusion that Dr. Donovan's opinions are not entitled to controlling weight and state sufficient good reasons allowing meaningful appellate review of the ALJ's ultimate conclusion.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff's Objections are hereby **SUSTAINED** (ECF No. 21) and the Court **REJECTS** the Magistrate Judge's Report and Recommendation (ECF No. 20). Accordingly, the Commissioner's finding of non-disability is **REVERSED** and this case is **REMANDED** for further proceedings in accordance with this decision.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 10, 2021**